# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TERESA ANN INGLE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-16-385-CG** |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Teresa Ann Ingle brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 9, hereinafter "R. _"), and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB application on January 22, 2013, alleging a disability onset date of May 2, 2012. R. 174-82, 200. Following denial of her application

---

[1] The current Acting Commissioner is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on July 18, 2014. R. 31-67. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. R. 31-32, 36-66. The ALJ issued an unfavorable decision on November 12, 2014. R. 9-30.

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 2, 2012. R. 14. At step two, the ALJ determined that Plaintiff had the severe medically determinable impairments of degenerative disc disease, diabetes mellitus type 1, and neuropathy. R. 14-18. The ALJ also found that Plaintiff had multiple nonsevere impairments: left-arm numbness, bladder incontinence, obesity, gastroparesis, gastroesophageal reflux disease, migraines, hypertension, constipation, hypothyroidism, hypercholesterolemia, insomnia, major depressive disorder, and anxiety. R. 14-18. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18-19.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 19-24. The ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b)," except that Plaintiff

> can lift up to twenty pounds occasionally and lift and carry ten pounds frequently. [Plaintiff] can stand and walk up to six hours and sit up to six hours in an eight-hour workday with normal breaks. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. [Plaintiff] can have

occasional exposure to hazardous moving machinery, unprotected heights, and raw chemicals or solutions.

R. 19. At step four, the ALJ determined that Plaintiff had no past relevant work. R. 24.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 24-25. Relying upon the VE's testimony regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light, unskilled occupations such as bakery worker, furniture-rental clerk, and photofinishing counter clerk, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 25. Therefore, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 25.

Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-5; 20 C.F.R. § 404.981.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th

Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff argues that the ALJ failed to properly evaluate a medical opinion issued by her treating physician, Cheryl Black, MD, and this error rendered the RFC determination unsupported by substantial evidence. *See* Pl.'s Br. (Doc. No. 15) at 5-14.[2]

### A. *The Relevant Record*

The record reflects that from 2001 to 2014, Plaintiff received nearly all of her health care for physical issues from Dr. Black, either at that physician's private-practice location or at an organization called Ministries of Jesus. From May 2001 to early 2012, Dr. Black, aided by other medical personnel, treated Plaintiff primarily for issues related to her diabetes mellitus, hypothyroidism, hypercholesterolemia, anemia, and insomnia. R. 271-

---

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's ECF system.

318, 343. During the relevant disability period—after the alleged onset date of May 2, 2012—Dr. Black additionally addressed Plaintiff's bilateral-leg numbness and tingling, bilateral-arm pain and numbness, left-shoulder impingement, gastroparesis, gastroesophageal reflux disease, incontinence, and migraines. Treatment during this period included in-person examinations, the prescription of medications, the order and review of numerous blood tests, and referral of Plaintiff for care from a gastroenterologist as well as for spine and hip x-rays and MRIs of both shoulders and the cervical spine. R. 337-42, 344-48, 352-59, 384-88, 392-97, 403-11, 451-61.

On January 18, 2013, Dr. Black completed a Medical Opinion Regarding Residual Functional Capacity. R. 336. In this Medical Opinion, Dr. Black stated that Plaintiff's impairments resulted in

- A maximum ability to stand and walk (with normal breaks) of less than 2 hours during an 8-hour day;

- A maximum ability to sit (with normal breaks) of less than 2 hours during an 8-hour day;

- A maximum ability to lift and carry 10 pounds occasionally; and

- A maximum ability to lift and carry 10 pounds frequently.

R. 336. Dr. Black also opined that Plaintiff's treatment or impairments would cause her to be absent from work more than 3 days per month and that her symptoms likely would interfere with attention and concentration needed to perform simple work tasks 25% or more of the workday. R. 336. Dr. Black stated that Plaintiff's limitations were caused by degenerative back disease in lumbar spine and diabetic neuropathy, that Plaintiff had had

back and leg pain for about one year, and that Plaintiff has pain and numbness in her legs. R. 336. Dr. Black stated that she had treated Plaintiff for more than 20 years. R. 336.

B. *The Treating Physician Rule*

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a) (2013). The Commissioner generally gives the highest weight to the medical opinions of a "treating source," which includes a physician who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* §§ 404.1502, .1527(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

When considering the medical opinion of a claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2). The opinion of a treating physician is given such weight if it is both well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. § 404.1527(c)(2).

A treating physician opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *4. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second,

distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5).

## C. The ALJ's Decision

In reaching her determination of Plaintiff's RFC, the ALJ summarized much of the record evidence, including the x-ray and MRI studies performed at Dr. Black's request. R. 20-23. The ALJ then addressed the Medical Opinion issued on January 18, 2013:

> The undersigned has read and considered the opinion of the claimant's treating physician, Cheryl S. Black, M.D. (Exhibit 5F/1). Dr. Black opined that the claimant can stand and walk less than two hours in an eight-hour workday. She opined that the claimant can sit less than two hours in an eight-hour workday, and . . . frequently and occasionally lift ten pounds. Finally, she opined that the claimant would miss work due to her impairments more than three days a month. The undersigned gives this opinion little weight. Although Dr. Black rendered her opinion in January 2013, the record does

not indicate that she treated the claimant during the time period at issue after her alleged onset date.  As a result, Dr. Black's opinion is based on examinations that occurred outside the period at issue.  Further, Dr. Black's opinion is in stark contrast to those of other medical doctor opinions contained in this case.  In addition, Dr. Black's opinion is inconsistent with the claimant's activities of daily living[,] which as previously stated include[] bathing her disabled husband, sweeping, vacuuming, mowing the lawn, and gardening.  Finally, Dr. Black's opinion is inconsistent with the limited treatment the claimant has received for her impairments.  For example, the claimant testified that she does not take any pain medications, she has not received any spinal injections, she has not undergone any surgery, she has not undergone any physical therapy, she has never used a traction device, she has never used a tens unit, she does not have a neck or back brace, and she does not require the use of a cane, crutches, or wheel chair.  Accordingly, the undersigned gives the opinion of Dr. Black little weight.

R. 23-24 (citations omitted).

The ALJ's ultimate RFC determination, including its findings that Plaintiff could stand/walk or sit up to 6 hours in an 8-hour workday and that Plaintiff could occasionally lift 20 pounds, directly conflicted with Dr. Black's Medical Opinion.  *Compare* R. 23-24, *with* R. 336.

### D. Discussion

Plaintiff's challenge to the ALJ's consideration of Dr. Black's Medical Opinion focuses upon the second prong of the treating-physician rule and argues that the ALJ failed to offer "good reasons" for assigning little weight to that opinion.  20 C.F.R. § 1527(c)(2); *see* Pl.'s Br. at 11-13; *Watkins*, 350 F.3d at 1301; *cf. id.* ("[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." (internal quotation marks omitted)).  The Court agrees and finds that remand is required.

Contrary to the ALJ's express finding that Dr. Black's Medical Opinion was based only on treatment and examinations that predated Plaintiff's disability onset date, the

record shows that Dr. Black both treated Plaintiff and reviewed studies (that had been performed at the direction of Dr. Black and her colleagues) after the alleged onset date of May 2, 2012, and prior to issuance of the ALJ's decision—i.e., "during the time period at issue." *See, e.g.*, R. 338 (Dr. Black noting Plaintiff's diabetes mellitus, bilateral leg numbness, left-arm numbness, and left-shoulder impingement, and ordering x-rays, on November 16, 2012), 385 (Dr. Black noting Plaintiff's diabetes mellitus, gastroparesis, and multiple complaints of pain, and ordering MRI studies, on September 20, 2013), 394 (Dr. Black noting that she had discussed bloodwork completed on September 11, 2013, with Plaintiff); *see also* R. 14 (ALJ finding Plaintiff's date last insured to be December 31, 2017). The Commissioner does not dispute that the ALJ "overlooked" some evidence but argues that the ALJ's evaluation of Dr. Black's opinion may still be upheld because: (i) requiring "a fully accurate reading of the record" "is not the standard," as "a decision of less than ideal clarity" will be upheld "if the agency's path may reasonably be discerned," Def.'s Br. (Doc. No. 16) at 16-17; *Davis v. Erdmann*, 607 F.2d 917, 918 n.1 (10th Cir. 1979) (internal quotation marks omitted); and (ii) the ALJ's rationale contained "facially valid" reasons and "still touched on two valid considerations." Def.'s Br. at 16, 17-22.

As to the Commissioner's first point, it is true that the Court does not "insist on technical perfection" in an ALJ's decision and discussion of his or her reasoning. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The ALJ's error here, however, is not a mere technical omission or a statement of "less than ideal clarity": the ALJ misapprehended the medical evidence of the record and relied upon that error as the primary basis to discount the medical opinion of a treating physician. *See* R. 23. Such an

error undermines the ALJ's assignment of "little weight" to the Medical Opinion and is not

a "good reason[]" to almost entirely discount Dr. Black's findings. R. 23-24; 20 C.F.R. §

404.1527(c)(2); *see* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996) (prescribing that

when an ALJ denies benefits, the "decision must contain specific reasons for the weight

given to the treating source's medical opinion, supported by the evidence in the case

record"); *cf. Winick v. Colvin*, 674 F. App'x 816, 821 (10th Cir. 2017) (rejecting ALJ's

analysis of the regulatory factors as resting on a "flawed premise" where the ALJ

mistakenly assumed that the physician had only examined the claimant twice but the

relationship actually had "included multiple treatment visits over an extended period of

time"); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (noting that "[t]he record

must demonstrate that the ALJ considered all of the evidence").[3]

With respect to the Commissioner's second point, the Court cannot properly find

that the ALJ's remaining rationale provides substantial evidence for her evaluation of the

Medical Opinion (and resulting RFC determination) or otherwise nullifies the error

described above. The ALJ also found that "Dr. Black's opinion is in stark contrast to those

---

[3] Moreover, the fact that Dr. Black's Medical Opinion was informed by treatment that
predated the disability period would not, by itself, justify rejection of that opinion. *Cf.
Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical
observations regarding a claimant's allegations of disability date from earlier, previously
adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's
medical history and should be considered by the ALJ."); *Andersen v. Astrue*, 319 F. App'x
712, 721-22, 722 n.8 (10th Cir. 2009) (finding that ALJ's purported assignment of "little
weight" to treating-physician medical opinions issued from 1993 to 1997 was not
sufficiently supported by "good reasons" where the ALJ discounted those opinions "for
being from the 'remote past,'" but the claimant's date last insured was December 31, 1998,
and "the ALJ could make inferences about the progression of [the claimant's] impairment"
from the earlier evidence).

of other medical doctor opinions contained in this case." R. 23-24. The other relevant medical source opinions contained in the record are (1) a physical consultative examination conducted in April 2013 by Julie Wiley, DO, and (2) a physical RFC assessment, based upon a nonexamining review of the medical record, issued by state agency physician Kenneth Wainner, MD, and affirmed by state agency physician Joseph Michalik, MD. R. 73-75, 87-89, 360-66. The ALJ discussed these opinions in the RFC determination, giving Dr. Wiley's opinion "great weight" and the RFC assessments "some weight." R. 23. But as regards the Medical Opinion, the ALJ failed to specify which opinions were in contrast with Dr. Black's and to properly explain how the medical evidence required the ALJ to accept one opinion over another. *See Hamlin*, 365 F.3d at 1215; R. 23-24; *see also Daniell v. Astrue*, 384 F. App'x 798, 803-04 (10th Cir. 2010).

The Commissioner argues that Dr. Wiley "did not indicate any physical . . . work conditions" but fails to note that Dr. Wiley simply performed a physical assessment and that the form she filled out did not ask her to opine as to work limitations or restrictions. Def.'s Br. at 19; *see* R. 360-66. And rather than being "in stark contrast" to the Medical Opinion, Dr. Wiley did assess Plaintiff as having diabetic neuropathy and chronic low back pain secondary to degenerative disc disease, which is consistent with Dr. Black's assessment. *Compare* R. 336, *with* R. 362. Dr. Wiley also noted reduced deep tendon reflexes in the bilateral lower extremities, decreased sensation on bilateral plantar surfaces of the feet, limited range of motion in the lumbrosacral spine in flexion, "[p]ain with movement in all directions" and with walking, positive straight-leg raise tests in both the seated and supine position on the left side, and ambulation "with a guarded antalgic gait." R. 361-66.

With respect to the reviewing consultants, Drs. Wainner and Michalik reviewed some of Plaintiff's medical record prior to issuing their RFC assessments in May 2013 and September 2013, but they did not have the benefit of multiple records, including MRI studies, generated after those dates (that were before the ALJ). R. 73-75, 87-89; *see, e.g.*, 384, 385, 392-93, 404-09, 451, 452, 453, 454, 455, 456-57, 459-61. The ALJ emphasized these state-agency physicians' "familiarity with the Social Security Act and its regulations," noted their opinions' consistency with certain examinations and certain aspects of Plaintiff's hearing testimony, and concluded that Dr. Black's Medical Opinion was "in stark contrast." R. 23. These statements are not a "sufficient explanation" for the ALJ to reject the views of Plaintiff's treating physician in favor of the opinions of nonexamining physicians. *Daniell*, 384 F. App'x at 804. There are differences of opinion between the reviewing consultants and Dr. Black but the ALJ does not specify the differences he found to be "in stark contrast" or, more importantly, explain how he resolved the differences based on the medical evidence. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." (emphasis and internal quotation marks omitted)). The Court is left with a general comparison of the opinion of a treating physician to those of reviewing consultants, and "[i]n general, treating source opinions should be given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant." *Daniell*, 384 F. App'x at 803. "The opinion of an examining

physician is generally entitled to less weight than that of a treating physician, and the opinion

of an agency physician who has never seen the claimant is entitled to the least weight of all."

*Id.* at 804 (emphasis and internal quotation marks omitted).

The ALJ also found that "Dr. Black's opinion is inconsistent with the claimant's

activities of daily living" and "with the limited treatment" Plaintiff had received.  R. 24; *see*

*also* R. 17-18, 22 (ALJ discussing Plaintiff's activities of daily living).  And the ALJ in

describing Plaintiff's activities ignores qualifications given by Plaintiff and uncontested in the

record.  For example, as to the statement that Plaintiff helps her disabled husband shower and

dress, Plaintiff testified that she does so only once or twice a week.  As to the statement that

Plaintiff mows the lawn, Plaintiff stated that she does so only "when [she] can," which is

about once every two months, and has to hire someone to perform the task when she cannot

"handle it."  R. 41, 43, 45, 58-59; *cf. Sitsler v. Astrue*, 410 F. App'x 112, 117-18 (10th Cir.

2011) (noting that ALJ should not make findings regarding a claimant's activities that ignore

relevant qualifications and limitations on the extent of those activities); *Gossett v. Brown*, 862

F.2d 802, 807 (10th Cir. 1998) ("[E]vidence that a claimant engages in limited activities . . .

does not establish that the claimant can engage in light or sedentary work activity.").  The

reference to limited treatment is undermined by the ALJ's misapprehension of the extent and

duration of Plaintiff's treatment by Dr. Black, as discussed above.[4]

---

[4] Regarding the Commissioner's contention that the ALJ's assessment "touched on two valid considerations"—i.e., "the ALJ clearly questioned" whether Dr. Black had treated Plaintiff with any frequency for her allegedly disabling impairments and whether Dr. Black had a solid foundation for her opinions, Def.'s Br. at 17-18—the Court may not properly ascribe these motivations to the ALJ when such motivations "are not apparent from the ALJ's decision itself."  *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 11th day of September, 2017.

_____

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE